NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2014
Decided August 29, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1448

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11-cr-874 |
| GEORGE A. PARKS, | |
| *Defendant-Appellant.* | Elaine E. Bucklo, *Judge.* |

**O R D E R**

George Parks was found guilty by a jury of possessing a gun after a felony conviction, 18 U.S.C. § 922(g)(1), and was sentenced to 244 months' imprisonment. On appeal he challenges the sufficiency of the evidence on the ground that the government's principal witness at trial, a police officer, is unworthy of belief. That contention borders on the frivolous.

At 5:51 a.m. on January 5, 2011, Chicago police officer Angelo Mandile and his partner arrested Parks on Ridgeway Avenue in the North Lawndale neighborhood. A

.38-caliber revolver was recovered at the scene, and Parks was charged in federal court with violating § 922(g)(1).

At trial Officer Mandile was the government's main witness. He told the jury that at 5:49 a.m. he and his partner were driving south in the 2100 block of S. Lawndale Avenue when they noticed a man, later identified as Parks, in an alley that intersects with Lawndale and Ridgeway. The officers turned onto Cermak Road and then north onto Ridgeway. From the corner of Cermak and Ridgeway, Mandile saw Parks peeking out of the alley, about 70 to 80 feet away. Once the officers pulled onto Ridgeway, Parks crouched behind a parked car. The officers drove toward Parks, and Mandile got out of the car, his weapon drawn. As the officer approached, Parks stood up and walked north on Ridgeway, away from Mandile. According to Mandile, Parks was only 10 feet ahead when he tossed away the revolver. Mandile ordered Parks to stop, detained him, and retrieved the gun. Mandile recalled that he placed Parks under arrest at 5:51 a.m.

On cross-examination Parks tried to impeach Mandile with the report of an ATF agent who interviewed him in May 2011, four months after the arrest. According to the agent's "nonverbatim" summary of the interview, Mandile had said that he first observed Parks at "approximately 5:30 a.m." in "the alley" and then observed him moving south on Ridgeway away from the alley entrance. Mandile and his partner, according to the report, then drove north on Ridgeway and spotted Parks standing back at the alley entrance. At trial Parks questioned Mandile about three inconsistencies between his testimony and the ATF agent's report: the time when Parks was first spotted (5:30 a.m. versus 5:49 a.m.), the direction he walked on Ridgeway (south versus north), and his posture when Mandile exited his vehicle (standing versus crouching). Mandile denied that his statements to the ATF agent differed from his trial testimony and refused to look at the agent's report, noting that it wasn't his report and thus wouldn't be of use in refreshing his recollection.

The government's remaining witnesses simply corroborated Officer Mandile's testimony concerning the approximate time he searched for Parks's name in the warrant database, and explained the lack of fingerprint evidence. The government introduced the gun which, the parties stipulated, had been manufactured outside the United States. The government also introduced a recording of a phone conversation between Parks and his ex-wife (made while Parks was in jail) during which Parks declared, "Ain't no prints on the gun of mine." Parks did not testify or present other evidence, except for the ATF agent's report, which defense counsel read to the jury with the prosecutor's consent. After deliberating for just over an hour, the jury returned a guilty verdict.

At sentencing, the district judge calculated a total offense level of 33 and a criminal-history category of VI (Parks is an armed career criminal), yielding a guidelines imprisonment range of 235 to 293 months. The judge sentenced him to 244 months.

On appeal Parks argues that the jury lacked sufficient evidence to convict. In this posture we review the evidence in the light most favorable to the government and must uphold the conviction if any rational trier of fact could have found Parks guilty. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *United States v. Carraway*, 612 F.3d 642, 644–45 (7th Cir. 2010). As if that bar was not high enough, Parks's sufficiency challenge depends on attacking Officer Mandile's credibility. Only if Mandile's testimony is "incredible as a matter of law," meaning that it is physically impossible for him to have observed what he described or for those events to have occurred at all, will we disturb the jury's credibility determination. *See United States v. Farmer*, 717 F.3d 559, 562–63 (7th Cir. 2013); *Carraway*, 612 F.3d at 645.

Parks's argument does not clear this high hurdle. He simply reiterates the same inconsistencies between Officer Mandile's trial testimony and the statements purportedly made to the ATF agent. But Mandile's testimony on these matters never wavered and conflicted only with a third party's hearsay summary of an interview with Mandile. *Cf. United States v. Williams*, 33 F.3d 876, 878–79 (7th Cir. 1994) (inconsistencies between police testimony and ATF agent's report insufficient to disturb jury's credibility determination).

Yet according to Parks, even if we take Officer Mandile's testimony at face value, it still defies reason to believe him. Mandile's retelling of the events precipitating the arrest cannot fit, Parks insists, within the 2-minute time frame that the officer's testimony establishes. Parks does not say *why* Mandile could not have driven around the block and exited his vehicle in under two minutes, and with good reason: The testimony at trial suggests that Mandile's vehicle had just over one-tenth of a mile to travel, which a vehicle traveling at 20 miles per hour can accomplish in roughly 20 seconds, leaving plenty of time for Mandile to exit the vehicle and arrest Parks, who did not run or resist.

Finally, Parks asks, why would someone who had not seen the police be "peeking" out of an alleyway, as if he was being followed? And why would he wait until he was within an officer's line of vision before ditching his gun? Parks essentially asks this court to select a particular interpretation of the evidence. But it is the jury's job

to choose among competing interpretations of the evidence, and so long as the jury does not choose irrationally, its judgment is not open to second-guessing on appeal. *See United States v. Blanchard*, 542 F.3d 1133, 1154 (7th Cir. 2008); *United States v. Jordan*, 582 F.3d 1239, 1247 (11th Cir. 2009).

With Mandile's credibility secure, the only remaining question is whether Mandile's testimony, coupled with the remaining evidence submitted at trial, was sufficient to convict. *See Carraway*, 612 F.3d at 646. The question is not close: Mandile's testimony connects Parks to the weapon, and Parks stipulated that he was a felon and that the gun was manufactured outside the United States. No more was required for a conviction. *See United States v. Tucker*, 737 F.3d 1090, 1092 (7th Cir. 2013).

**AFFIRMED**.